**FEDERAL DEPOSIT INSURANCE COR-
PORATION, Appellant,**

v.

**The PEOPLES NATIONAL BANK OF
TYLER et al., Appellees.**

No. 229.

Court of Civil Appeals of Texas.

Tyler.

Oct. 20, 1966.

Rehearing Denied Nov. 3, 1966.

Frank L. Skillern, Jr., Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellant.

Charles Potter, Spruiell, Lowry, Potter, Lasater & Guinn, Tyler, for Peoples Nat. Bank of Tyler.

Kelly Smith, Smith & Smith, Tyler, for J. B. McClung.

Ben Johnson, Johnson, Hathaway & Jackson, Tyler, for L. A. and Wm. L. Brady.

SELLERS, Justice.

The Winona State Bank of Winona, Texas, a banking corporation, had been operated by J. B. McClung, the sole banker in charge, prior to the time this suit was filed, and for many years. In fact, J. B. Mc-

Clung's father operated the bank for many years before J. B. McClung took charge of the same. Some time around 1965, this bank ceased to do business and was placed in control of appellant Federal Deposit Insurance Corporation for liquidation. J. B. McClung was indicted for some infraction of the banking laws.

This lawsuit in the trial court was brought by the Peoples National Bank of Tyler against J. B. McClung, William L. Brady, L. A. Brady, and the Federal Deposit Insurance Corporation. The Plaintiff's allegations, in its petition, are as follows:

"1. In due course of business plaintiff acquired the following promissory note:

"Promissory note dated June 17, 1964, in the principal sum of $15,000.00, executed by J. B. McClung, payable to the order of The Peoples National Bank of Tyler on May 10, 1965, bearing interest at the rate of 6 per cent per annum, containing the usual provisions for acceleration of payment and attorney's fees.

"2. In due course of business the following promissory notes were endorsed to it as collateral for the note described in the preceding paragraph:

"(a) Promissory note dated March 6, 1963, in the principal sum of $10,000.00 executed by L. A. Brady, payable to the order of J. B. McClung on demand, bearing interest at the rate of 10 per cent per annum, containing the usual provisions for acceleration of payment and attorney's fees.

"(b) Promissory note dated May 12, 1961, in the principal sum of $5,000.00, executed by William L. Brady, payable to the order of J. B. McClung on August 1, 1965, bearing interest at the rate of 10 per cent per annum, containing the usual provisions for acceleration of payment and attorney's fees.

"3. The F. D. I. C., claiming to act as the successor in rights of the Winona State Bank, has asserted some character of claim of ownership with reference to the aforesaid notes given by L. A. Brady and William L. Brady. Plaintiff's information, but which is not known to be the fact, is that the F. D. I. C. claims to be the liquidator and receiver of the Winona State Bank and entitled to receive and collect all its assets.

"4. Plaintiff is not fully advised as to the exact nature of the claim of the F. D. I. C. to the said Brady notes, but denies that the said claim is a valid or legal one. Plaintiff alleges that it is the holder in due course of the Brady notes and that if the F. D. I. C. has any right thereto, which is denied, that it is subject and inferior to plaintiff's rights thereto. Nevertheless, the asserted rights of the F. D. I. C. have cast a cloud on the plaintiff's right to such an extent that the makers of the Brady notes are uncertain to whom payment should be made and therefore have not made payment.

"5. Plaintiff sues for a declaratory judgment declaring that plaintiff's rights to the Brady notes are valid and legal rights, prior and superior to any claim of F. D. I. C."

McClung filed answer admitting the endorsement and assignment of the notes involved; then the Bradys filed answer as follows:

"I.

"These defendants do not personally possess information upon which they can either admit or deny the allegations in Paragraph 1 of the complaint, but they say they have no present information contrary to that set out in this portion of the Plaintiff's Complaint.

"II.

"These defendants say that they can neither admit nor deny the allegations in Paragraph 2(a) and 2(b) of the Plaintiff's Complaint since they do not have

personal information upon which to make any such denial or admission, however, they do say that on the dates indicated that they, and each of them, executed notes payable in the various sums indicated in the Plaintiff's Complaint, but as to whether said notes were made payable to .J. B. McClung or the Winona State Bank at the time they were executed by these Defendants, they, and neither of them, can of their own knowledge state. They say that when they executed the notes described in Paragraphs 2(a) and 2(b) of the Plaintiff's Petition, as they had executed promissory notes with J. B. McClung on many prior occasions, they and each of them on each of such occasions assumed they were borrowing from the Winona State Bank. Neither of them can say positively whether J. B. McClung's name was on any of the notes in question as payee or not. They do say that if such was the case they, and neither of them, were ever aware of such.

"III.

"With the exception of the question of whether J. B. McClung was payee on the notes in Paragraphs 2(a) and 2(b), which matter these defendants can neither admit nor deny, these defendants admit the execution of the notes described in paragraph 2(a) and 2(b) of the Plaintiff's Petition and say they are willing to pay the same in the sums and under the terms of such notes and are in doubt only as to whom such payment should be made.

"IV.

"As Indicated in the Plaintiff's Petition herein the Federal Deposit Insurance Corporation and the Peoples National Bank of Tyler, Texas are each asserting ownership or other rights in and to said notes. These Defendants cannot by their own decision pay either of such parties without incurring the risk of ha--ving to pay the same again. They say the matter should be determined so these Defendants can pay the rightful holder of such notes."

The appellant filed answer as follows:

"II.

"This Defendant is without information upon which to either admit or deny the allegations contained in Paragraph I of Plaintiff's Petition.

"III.

"This Defendant denies the allegations contained in Paragraph 2 of Plaintiff's Petition. This Defendant admits that Defendants, William F. Brady and L. A. Brady signed promissory notes on the dates and in the amounts set out in said paragraph, but denies that said notes were payable to the order of Defendant J. B. McClung at the time of their execution. This Defendant further denies that Plaintiff holds said notes as collateral.

"IV.

"With regard to the promissory notes referred to in Paragraph II of Plaintiff's Petition, this Defendant alleges:

"a. Based upon information and belief, that said notes were payable to the Winona State Bank, Winona, Texas, at the time each of said notes was executed by Defendants William F. Brady and L. A. Brady, and thereafter, each of said notes was altered and changed by Defendant J. B. McClung, who inserted his own name as payee in place of The Winona State Bank; each of such alterations was a material one and was made prior to the alleged assignment of said notes to Plaintiff by Defendant J. B. McClung.

"b. That if, in fact, said notes were payable to Defendant J. B. McClung at the time of their execution that no consideration passed from Defendant J. B. McClung to either William F.

Brady or L. A. Brady and therefore said notes were unenforceable by Defendant J. B. McClung and unenforceable by Plaintiff, who is not a holder in due course.

"c. That Plaintiff is not a holder in due course of said note because each of said notes was not regular on its face at the time that it was transferred to Plaintiff by Defendant J. B. McClung.

" * * * "

The case was tried before the Court without a jury and resulted in a judgment for the Plaintiff bank for title to the notes involved as holders in due course, declaring the Bradys liable on the notes according to their face and tenor and further holds J. B. McClung liable as endorser on the notes. From this judgment, the Federal Deposit Insurance Corporation has duly prosecuted this appeal. At the request of appellant, the Court filed the following Findings of Fact and Conclusions of Law:

## "FINDINGS OF FACT AND CONCLUSIONS OF LAW

"1. A promissory note dated June 17, 1964, in the principal sum of $15,000 was executed by J. B. McClung, payagle to the order of The Peoples National Bank of Tyler, on May, 10, 1965.

"2. On February 2, 1965, the following promissory notes were delivered and endorsed by J. B. McClung to The Peoples National Bank of Tyler as collateral for the above note:

"(a) Promissory note dated March 6, 1963, in the principal sum of $10,000, executed by L. A. Brady, payable to the order of J. B. McClung on demand.

"(b) Promissory note dated May 12, 1961, in the principal sum of $5,000, executed by William L. Brady, payable to the order of J. B. McClung on or before August 1, 1965.

"3. The Brady notes referred to in Para. 2 (a) and (b), were on the printed form used by the Winona State Bank. All of the blanks in the note were filled in the handwriting of J. B. McClung, and also in the same handwriting the words 'J. B. McClung at' were written in such way that J. B. McClung became the payee in the note and the note was payable at the Winona State Bank.

"4. It has long been a business practice to use bank form printed promissory notes and to change the payee to a private individual by making similar insertions of the name of the payee, either on a typewriter or by longhand. The insertion of the name of the payee in this manner is not a suspicious circumstance such as should arouse the suspicions of one acquiring the notes that the name of the payee was altered after the note was signed by the maker.

"5. Within a few days after the Peoples National Bank received the Brady notes as collateral security, Wilton Daniel and Walter Adams, officers of said bank, made a full and proper investigation concerning the validity of the notes, by calling upon L. A. Brady and William Brady, presenting the notes to the Bradys and inquiring whether they acknowledged the validity of the same, advising the Bradys that they had acquired the same as collateral security. To this inquiry, the Bradys acknowledged that the notes were valid and unpaid, without at any time suggesting that the name of the payee had been altered. The reason for this investigation was not any suspicion that the notes had been altered, but was made due to the fact that J. B. McClung had been charged with irregularities in the management of the Winona State Bank, a fact learned by The Peoples National Bank several days after receiving the said collateral notes, and the bank officials desired to have an acknowledgment by the Bradys that the notes had been validly executed and were unpaid. This investigation is the only probative evidence concerning unauthorized alteration and indicates there was none.

"6. L. A. Brady and William L. Brady testified that they had no recollection whether the name 'J. B. McClung' was inserted as payee in the notes, respectively, at the time they executed the same, and they could not testify either way on this issue.

"7. J. B. McClung declined to testify, relying upon the privilege of the Fifth Amendment to the U. S. Constitution, because he has been indicted for irregularities in the management of the affairs of the Winona State Bank.

"8. The Winona State Bank ledger sheets on the note accounts of L. A. Brady and William L. Brady do not show that the bank received the collateral notes referred to above.

"9. There is no probative evidence showing an unauthorized alteration of the above notes made after signature by the maker.

"10. The Peoples National Bank took the said collateral notes (the Brady notes) in good faith, without knowledge or notice and without being put on inquiry of any possible unauthorized alterations.

"CONCLUSIONS OF LAW

"1. Where, in a printed bank note form, the name of the payee bank is obliterated and the name of an individual substituted, such alteration does not render such note not 'complete and regular upon its face' as required in Art. 5935, Sec. 52(1) R.C. S.

"2. The Peoples National Bank is a holder in due course of the collateral notes given by L. A. Brady and William L. Brady to J. B. McClung, and endorsed by him to The Peoples National Bank. Art. 5935, Sec. 52; Art. 5948; Art. 5933.

"3. In the absence of evidence to the contrary (and there is no such evidence) it is presumed that the name 'J. B. McClung' was inserted as payee in the collateral notes prior to their execution by L. A. Brady and William L. Brady. The simple insertion of the name of such payee in the same handwriting as appears in the other blanks in the note is not a suspicious circumstance, such as to put a party on inquiry or notice of a possible unauthorized alteration.

"4. The officials of The Peoples National Bank, after receiving the Brady collateral notes, properly verified the same by presenting them to the Bradys, respectively, and inquiring whether they were valid notes and were unpaid. If the notes, when presented, had contained an unauthorized alteration, it was the duty of the Bradys, respectively, to so advise the bank at the time it made such inquiry, which they wholly failed to do. Therefore I conclude that if the Bradys had been directly asked whether there was an unauthorized alteration, they would not have replied in the affirmative.

"5. The law and the facts are with the plaintiff, and the plaintiff is entitled to judgment declaring that it is the lawful holder in due course of the Brady collateral notes, and that the Federal Deposit Insurance Corporation has no right or claim thereto."

■ The appellant requested the Court to make additional findings of fact which were denied, and complaint on this appeal is made to such refusal. We have carefully reviewed the Court's findings of fact and find they are fully supported by the evidence and that the court's conclusions of law are fully supported by such findings. We therefore are of the opinion that there was no error by the trial court in refusing to make the additional findings requested.

■ In this State, the law seems to be settled that when a printed form is used and there appears to be interlined in the instrument a change in the handwriting of someone, a presumption absent proof to the contrary arises that the change was made before the instrument was executed. Brightwell et al. v. *International-Great Northern*

R. Co. et al., 121 Tex. 338, 49 S.W.2d 437. 3 T.J.2d, Section 44, p. 73. Rodriquez v. Hayes, 761 Tex. 225, 13 S.W. 296.

The only parties giving evidence on the trial as to the execution of the notes at the time they were executed were the Bradys, the makers of the notes, and the sum and substance of their evidence is that they do not know who the payee was in the notes at the time they signed and executed the same, and yet they acknowledged they owe the same according to the tenor thereof. We find this rule laid down in 4 Am.Jur.2d, Section 87, page 81:

"The proof or admission of the signature of the maker of an instrument is prima facie evidence that the instrument written over it is the act of the party; and this prima facie evidence will stand as binding proof, unless the defendant can rebut it by showing from the appearance of the instrument itself, or otherwise, that it has been altered. And even where the alteration is obvious, testimony of the plaintiff to the effect that the defendant consented to such alteration is a sufficient explanation to make the instrument admissible and, together with the instrument itself, is sufficient to entitle him to go to the jury * * *."

 The mere fact that the note was executed on a form note of a bank and the name of the bank was changed to that of an individual will not suffice as evidence on its face to show a subsequent change of the instrument. This exact question was decided in a case almost like the one under consideration Clapper et al. v. Gamble, 8 Cir., 28 F.2d 755:

"In their answer the defendants, other than Dooley, repudiated the notes as above set out, and although they alleged in their answer that the notes were altered with the knowledge of the Drovers' Bank, and received by that bank with knowledge that they had been altered, there was no substantial evidence to sustain this contention. Moreover, the presi-dent of the Drovers' Bank testified that, at the time the notes were taken by his bank, he knew of no defects or infirmities in them. He further testified that it was not unusual, where printed forms of notes were used, to find the printed name of the payee stricken out and the name of a different payee written in. Without further reviewing or analyzing the evidence on this point, it is sufficient to state that we are of the opinion that there was substantial evidence to support the finding that the notes were complete and regular upon their face, and that the other requisites of a holder in due course were fulfilled."

There are other contentions by appellant which are believed to be without merit and are overruled. It is the opinion of this court that the trial court had ample evidence before it to support its judgment, and the same will in all respects be affirmed.

Affirmed.